# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATALINA LEON, ) | 1:10-cv-0077 SKO |
| ) | |
| ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, ) | **SOCIAL SECURITY COMPLAINT** |
| ) | |
| v. ) | (Doc. 1) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 8, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1966, has a high-school education, and previously worked as a produce sorter. (Administrative Record ("AR") 32, 76, 91, 159.) On September 27, 2006, Plaintiff filed an application for SSI, alleging disability beginning on July 1, 1997, due to a back injury.[2] (AR 24, 159-62, 167.)

**A.    Medical Evidence**

   **1.    Fresno County Human Services Department of Behavioral Health**

Between September 28, 2005, and July 25, 2007, Plaintiff attended group and individual mental health therapy sessions provided by Fresno County Human Services. (AR 375-448.) The sessions lasted at most from 50 to 120 minutes. (AR 376-77, 379, 386, 393, 407, 412, 414.)

   **2.    State Agency Physicians**

On January 8, 2007, Glenn Ikawa, M.D., a state agency psychiatrist, assessed Plaintiff's mental residual functional capacity ("RFC")[3] and opined that, although Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, she was not otherwise significantly limited. (AR 275-78.)

On that same date, Dr. Ikawa also completed a psychiatric review technique form in which he opined that Plaintiff's major depressive disorder and borderline personality disorder caused Plaintiff (1) mild to moderate restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; and (3) mild to moderate difficulties in maintaining concentration,

---

[2] Plaintiff previously alleged disability beginning on June 23, 1997, in an application for SSI filed on September 30, 2003, which the Commissioner denied on March 17, 2006. (AR 94-103.) Accordingly, the only period at issue in this case is the period between March 18, 2006, through July 1, 2009, the date of the Administrative Law Judge's decision at issue in this case.

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1 persistence, or pace. (AR 292-305.) Plaintiff experienced no episodes of decompensation. (AR
2 302.)
3      On January 8, 2007, Charles Fracchia, M.D., a state agency physician, assessed Plaintiff's
4 physical RFC and found that Plaintiff (1) could occasionally lift and/or carry up to 10 pounds and
5 frequently up to 10 pounds; (2) stand for about six hours in an eight-hour workday; (3) sit for about
6 six hours in an eight-hour workday; and (4) perform unlimited pushing/pulling with the upper and
7 lower extremities. (AR 280.) Plaintiff could occasionally climb, balance, and stoop, and frequently
8 kneel, crouch, and crawl. (AR 281.) Plaintiff had no manipulative, visual, communicative, or
9 environmental limitations. (AR 282-83.) Another state agency physician, Ian Ocrant, M.D.,
10 affirmed Dr. Fracchia's findings on September 21, 2007. (AR 286.)

11    **3.    Chinyere Amadi, M.D.**

12      On May 30, 2007, Dr. Amadi, Plaintiff's treating physician, completed a physical RFC
13 questionnaire. (AR 458-61.) Plaintiff was diagnosed with low back pain with radiculopathy,[4] and
14 her prognosis was "fair to good with adequate pain control." (AR 458.) Dr. Amadi noted Plaintiff's
15 symptoms included back and right knee pain, which Plaintiff rated at times "8" out of "10." (AR
16 458.) Plaintiff's pain was aggravated by prolonged walking and bending at the knee. (AR 458.)
17 When asked to identify all clinical findings and objective signs supporting the doctor's diagnosis,
18 prognosis, and description of symptoms and limitations, Dr. Amadi indicated that there were "[n]o
19 physical *objective* findings on exam"; X-rays revealed bilateral facet arthropathy[5] and slight disc
20 bulge at L4-S1. (AR 458.) Dr. Amadi stated that Plaintiff tolerated Tylenol, which could cause
21 drowsiness. (AR 458.) Dr. Amadi further opined that Plaintiff's impairments had lasted, or were
22 expected to last, over twelve months. (AR 458.) Dr. Amadi did not know whether Plaintiff was a
23 malingerer. (AR 459.)

---

[4] Radiculopathy denotes disease of the nerve roots. *Dorland's Illustrated Medical Dictionary* 1595 (31st ed. 2007) [hereinafter *Dorland's*].

[5] Arthropathy denotes any joint disease. *Dorland's*, *supra*, at 160.

1    According to Dr. Amadi, Plaintiff's depression contributed to the severity of Plaintiff's
2 symptoms and functional limitations. (AR 459.) The doctor opined, however, that Plaintiff's pain
3 and other symptoms were rarely severe enough to interfere with the attention and concentration
4 necessary to sustain simple, repetitive work tasks. (AR 459.) According to Plaintiff's own report,
5 Plaintiff was capable of performing only "low stress" work. (AR 459.)

6    Dr. Amadi ultimately opined that Plaintiff could neither sit for more than two hours nor stand
7 for more than thirty minutes at a time. (AR 459-60.) In an eight-hour workday, Plaintiff could only
8 stand/walk for a total of less than two hours and sit for a total of about four hours. (AR 460.)
9 Plaintiff did not require unscheduled breaks during an eight-hour workday as long as she was not
10 standing for prolonged periods of time. (AR 460.) Plaintiff could frequently lift and/or carry up to
11 ten pounds and occasionally up to twenty pounds. (AR 460.) Plaintiff could occasionally twist,
12 stoop/bend, and climb stairs. (AR 460.) Plaintiff could rarely crouch or climb ladders. (AR 460.)
13 Plaintiff did not have limitations in performing repetitive reaching, handling, or fingering. (AR 460.)
14 Dr. Amadi estimated that Plaintiff would be absent from work for about four days per month as a
15 result of her impairments. (AR 461.)

16    **4.    Ekram Michiel, M.D.**

17    On September 8, 2007, Dr. Michiel performed a consultative psychiatric evaluation of
18 Plaintiff. (AR 449-51.) Dr. Michiel diagnosed Plaintiff with depressive disorder not otherwise
19 specified. (AR 451.) Dr. Michiel ultimately opined that Plaintiff "is able to maintain attention and
20 concentration and to carry out simple job instructions." (AR 451.) Further, Plaintiff "is able to relate
21 and interact with coworkers, supervisors and the general public." (AR 451.) Dr. Michiel found,
22 however, that Plaintiff "is unable to carry out an extensive variety of technical and/or complex
23 instructions." (AR 451.)

24    **5.    Abbas Mehdi, M.D.**

25    On September 8, 2007, Dr. Mehdi performed a consultative orthopedic evaluation of
26 Plaintiff. (AR 452-55.) Dr. Mehdi found that Plaintiff's "symptoms are consistent with a possible

27

28                                          4

right L4-5 radiculopathy secondary to lumbar disk disease and degenerative spine disease." (AR 455.)

Dr. Mehdi's orthopedic examination revealed "[s]traight leg raising positive on the right but negative on the left." (AR 453.) Plaintiff's motor strength was "Normal = 5/5." (AR 454.) Motor examination of Plaintiff "was consistent with the presence of mild right calf atrophy compared to the left side." (AR 454.) However, "[o]n manual motor muscle testing there was no weakness of the right lower extremity compared to the left." (AR 454.) Further, Dr. Mehdi found that, while Plaintiff "had decreased sensation in the right L4-5 dermatome," "right leg sensory [sic] involving the others [sic] areas, the back of the leg and the upper thigh was [sic] normal. Left lower extremity sensation was normal." (AR 454.)

In assessing Plaintiff's functional capacity, Dr. Mehdi opined as follows:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can stand and walk six hours out of an eight hour day with normal breaks. [Plaintiff] can sit six hours out of an eight hour day with normal breaks. Exertional limitations include climbing, stooping, kneeling, pushing, balancing, crouching, crawling and pulling.

(AR 455.)

### 6.     Tricia Birdwell, M.D.

On January 20, 2009, Dr. Birdwell, Plaintiff's treating physician, completed a physical RFC questionnaire. (AR 491-94.) Dr. Birdwell diagnosed Plaintiff with chronic back pain and depression, but stated that Plaintiff's prognosis was good. (AR 491.) Dr. Birdwell characterized Plaintiff's pain as low back pain with sciatica that increased with prolonged standing or walking; on most days the pain was mild to moderately severe. (AR 491.) Clinical findings and objective signs supporting Dr. Birdwell's diagnosis, prognosis, and description of Plaintiff's symptoms and resulting limitations included muscle spasms and L4-5 degenerative disc disease without stenosis.[6] (AR 491.)

---

[6] Spinal stenosis denotes narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space; symptoms are caused by compression of the cauda equina and include pain, paresthesias (abnormal touch sensations), and neurogenic claudication (limping accompanied by pain and paresthesias in the back, buttocks, and lower limbs that is relieved by stooping or sitting). *Dorland's*, *supra*, at 375, 1404, 1795.

1    Dr. Birdwell opined that Plaintiff's impairments neither lasted nor were expected to last for
2 more than twelve months, and stated that Plaintiff was a malingerer. (AR 492.) Dr. Birdwell
3 ultimately opined that Plaintiff could neither sit for more than two hours nor stand for more than
4 thirty to forty minutes at a time. (AR 492-93.) In an eight-hour workday, Plaintiff could only
5 stand/walk for a total of less than two hours and sit for a total of about four hours. (AR 493.)
6 Plaintiff did not require unscheduled breaks during an eight-hour workday. (AR 493.) Plaintiff
7 could occasionally lift and/or carry less than ten pounds and rarely ten pounds. (AR 493.) Plaintiff
8 could never twist, stoop/bend, or climb. (AR 493.) Plaintiff had "mild to moderate" limitations in
9 performing repetitive reaching, handling, or fingering. (AR 493.) Dr. Birdwell estimated that
10 Plaintiff would be absent from work for about two days per month as a result of her impairments.
11 (AR 494.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 104-37.) On February 19, 2009, ALJ Patricia Flierl held a hearing where Plaintiff and a vocational expert ("VE") testified. (AR 72-93.)

**1.     Plaintiff's Testimony**

The ALJ summarized Plaintiff's testimony in her decision as follows:

> [Plaintiff] testified that her condition has worsened since the last hearing, and that she suffers from unbearable pain in her back and right leg. She testified that her back hurts her every day[,] and on a scale of 1-10 the back pain is an 8 every day. [Plaintiff] testified that she takes 6 naproxin [sic] tablets every day. The record shows that she is not taking any narcotic analgesics for pain control at this time[,] but she was taking Tylenol with codeine tablets, as least on August 29, 2007, but around that time her treating physician, Dr. Amadi[,] started introducing non steroidal anti-inflammatory medications (Celebrex), and . . . she now takes naprosyn, an over the counter medication. [Plaintiff] testified that she can walk for 15 minutes using a cane[,] but she does not do that every day. She stated she does not use a cane at home and she has a ground floor apartment. She also stated that her cane was prescribed for her by the orthopedist that performed arthroscopic surgery on her right knee in 2008.

(AR 30, 76-90 (internal citations omitted).)

6

### 2. Vocational Expert Testimony

The VE testified that Plaintiff's past work as a produce sorter as she performed it was unskilled and medium.[7] (AR 91.) A hypothetical person of Plaintiff's age, education, and work experience who was limited to performing work at the sedentary exertional level[8] would not be able to perform Plaintiff's past relevant work, but could perform work as an almond blancher, semiconductor loader, and hand bander. (AR 91-92.)

Such a hypothetical person, however, could not perform any work in the national economy if that person could (1) rarely lift ten pounds; (2) stand and walk less than two hours for thirty to forty minutes at a time; (3) never climb, balance, kneel, crouch, crawl, or stoop; (4) sit for only four hours in an eight-hour day; (5) only perform simple, repetitive tasks; and (5) be expected to be absent from work two times per month. (AR 92-93.)

## C.  ALJ's Decision

On July 1, 2009, the ALJ issued a decision finding Plaintiff not disabled since the application date of September 27, 2006. (AR 18-33.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since September 27, 2006; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform jobs that existed in the national economy. (AR 26-33.)

In so finding, the ALJ found that Plaintiff's impairments did not meet or medically equal section 1.04 of the Listing of Impairments regarding musuloskeletal disorders of the spine (AR 27). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The ALJ specifically found as follows:

---

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

> In this case, [Plaintiff] appeared at the hearing using a cane, but admitted it was prescribed by a doctor that performed her knee surgery in June, 2008. [Plaintiff] testified that she can walk for 15 minutes and does not need her cane to ambulate around her home. While [Plaintiff] has undergone 2 MRI's of her lumbar spine, in January of 2005 and in August of 2006, both showing [Plaintiff] has significant spinal stenosis at levels L4 through S1, secondary to congenital narrowing, the scans also show there has been no significant change in the interim period, and there is no suggestion of nerve root impingement.

(AR 28.)

The ALJ further found that Plaintiff had the RFC to (1) lift and carry up to ten pounds, (2) stand and/or walk for two hours in an eight-hour workday, and (3) sit for six hours in an eight-hour workday. (AR 29.) Plaintiff was further limited to performing simple, repetitive tasks. (AR 29.)

As for Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 30.) The ALJ noted that Plaintiff "has not reported any limitations in the length of time she can sit. During the hearing she was seated for at least 42 minutes without any apparent distress." (AR 30.) "Additionally, there is evidence that she was able to sit in group and individual therapy sessions for sessions ranging in duration of 50-120 minutes without any apparent distress reported by the therapist." (AR 30.)

The ALJ further noted that the medical evidence contained RFC evaluations from Drs. Amadi and Birdwell, Plaintiff's treating physicians, as well as the findings of consultative examinations by Drs. Mehdi and Michiel. (AR 30-31.) The ALJ found as follows:

> It is emphasized that the restrictions indicated by [Plaintiff's] treating physicians are fairly consistent with those determined in this decision, and those determined in the prior ALJ decision with the exception of the total amount of time [Plaintiff] may walk or sit in a workday. Substantial weight is assigned to the opinions of both treating physicians and both consultative examiners as well as the State agency evaluators to the extent they are consistent with the established residual functional capacity . . . .

8

(AR 31.)

The ALJ ultimately found that Plaintiff's limitations did not preclude her from performing work activities consistent with the ALJ's RFC assessment, stating as follows:

> [Plaintiff] has severe impairments which do limit her functionality but her testimony regarding fairly active daily activities, the conservative treatment which she has received, including the use of anti-inflammatory analgesia as opposed to narcotic analgesia, the evidence that her impairments are stable and have shown no worsening between MRIs and the relative lack of any recent treatment of import all suggest [Plaintiff] is capable of performing work activities at the residual functional capacity described in [the ALJ's decision].

(AR 32.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on November 24, 2009. (AR 6-10.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

**D.  Plaintiff's Appeal**

On January 12, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in finding that Plaintiff's impairments did not meet or equal 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A. ("Listing 1.04A"). Plaintiff further maintains that the ALJ erred in failing to articulate specific, legitimate reasons for rejecting the opinions of Drs. Amadi and Birdwell.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the

requirements of the Listing of Impairments (the "Listings"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.  The ALJ Did Not Err in Finding that Plaintiff's Impairments Did Not Meet or Equal Listing 1.04A**

At the Third Step of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tackett*, 180 F.3d at 1098. If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. *Id.*; *see also* 20 C.F.R § 416.920(d). The burden of proof is on the claimant to establish that he or she meets or equals any of the impairments in the Listings. *Tackett*, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.* An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." Social Security Ruling 83-19, 1983 WL 31248, at *2.[9] An impairment

---

[9] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." *Id.* Symptoms alone, however, will not justify a finding of equivalence. *Id.*

Plaintiff asserts that the ALJ erred in not finding that Plaintiff had an impairment that met or equaled Listing 1.04A. Listing 1.04A provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A. In other words, evidence of both motor loss (i.e., muscle weakness or atrophy associated therewith) and sensory or reflex loss, in addition to limitation of motion of the spine, is required. Further, "a report of atrophy should be accompanied by measurement of the strength of the muscle(s) in question generally based on a grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength." *Id.* § 1.00E(1).

In this case, substantial evidence in the record demonstrates that Plaintiff did not have muscle weakness as required by Listing 1.04A. Testing by Dr. Mehdi in September 2007 revealed normal (5/5) motor strength. (AR 454.) Furthermore, although Plaintiff demonstrated mild right calf atrophy, manual motor muscle testing revealed no weakness of Plaintiff's right lower extremity. (AR 454.) Thus, despite evidence in the record demonstrating that Plaintiff suffered from degenerative disc disease and spinal stenosis, Plaintiff has failed to show that, absent evidence of muscle weakness, her impairments met or equaled Listing 1.04A. Accordingly, Plaintiff's argument in this regard is unavailing.

**B.     The ALJ's Consideration of the Opinions of Drs. Amadi and Birdwell**

The ALJ gave less weight to the opinions of Drs. Amadi and Birdwell, Plaintiff's treating physicians, regarding the total amount of time Plaintiff could walk or sit in a workday, but otherwise gave "substantial weight" to their opinions to the extent they were consistent with the ALJ's RFC assessment. (AR 31.) Plaintiff maintains that the ALJ failed to articulate specific, legitimate reasons to reject their opinions.

**1.     Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**2.     Analysis**

The ALJ discounted the opinions of Drs. Amadi and Birdwell, who opined that, among other things, Plaintiff could stand and/or walk for a total of less than two hours and sit for a total of about four hours in an eight-hour workday. (AR 31, 460, 493.) Regarding Dr. Amadi's opinion, the ALJ

noted the lack of physical objective evidence on examination to support Dr. Amadi's diagnosis, prognosis, and description of symptoms and limitations, which Dr. Amadi himself even noted on the physical RFC questionnaire. (AR 30, 458.) The lack of objective medical evidence supporting Dr. Amadi's opinion was a specific, legitimate reason to discount the doctor's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's rejection of the controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form, and not supported by the record as a whole, or by objective medical findings).

Moreover, Plaintiff's self-reporting formed the basis, at least in part, for the opinion of Dr. Amadi, who opined that, "per [Plaintiff's] report," she was only capable of "low stress" work. (AR 459.) In this regard, Plaintiff does not contest the ALJ's adverse credibility finding in this case. Plaintiff herself admits in her opening brief that "she exaggerates [and] has an emotional component that makes matters worse." (Doc. 12 at 19.) Thus, to the extent that Dr. Amadi's opinion was based on Plaintiff's self-reported complaints, this basis was also a specific, legitimate reason to discount Dr. Amadi's opinion. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (disregarding treating physician's opinion because it was premised on plaintiff's subjective complaints, which the ALJ had already discounted).

As for Dr. Birdwell's opinion, the ALJ noted that Dr. Birdwell found Plaintiff to be a malingerer and opined that Plaintiff's impairments neither lasted nor were expected to last for more than twelve months. (AR 31, 492.) Dr. Birdwell's opinion, therefore, did not establish that Plaintiff was disabled. *See* 42 U.S.C. § 1382c(a)(3)(A) (providing that a claimant is not considered disabled unless he cannot work because of an impairment that is expected to last at least twelve months); 20 C.F.R. § 416.905(a). In any event, Dr. Birdwell also found Plaintiff to be a malingerer, which was a specific, legitimate reason to discount the doctor's opinion regarding Plaintiff's physical RFC. *See, e.g., Hegel v. Astrue*, 325 F. App'x 580, 581 (9th Cir. 2009) (specific, legitimate reasons supporting ALJ's findings included inconsistencies in medical opinions, reports of malingering, invalid test results, and claimant's lack of credibility); *Vandover v. Astrue*, No. ED CV 09-740-SH, 2010 WL

14

883838, at *3 (C.D. Cal. Mar. 5, 2010) (determining that clinical evidence of claimant's malingering undermined reliability of treating physician's opinion, which were based in part on claimant's own symptom reporting, and, therefore, was specific, legitimate reason for ALJ to assign less than controlling weight to physician's opinion). Accordingly, the ALJ stated specific, legitimate reasons to discount Dr. Birdwell's opinion to the extent it was inconsistent with the ALJ's RFC assessment.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Catalina Leon.

IT IS SO ORDERED.

**Dated:   March 18, 2011**            /s/ Sheila K. Oberto
                                                UNITED STATES MAGISTRATE JUDGE